Case number 21-1620, the estate of Seth Michael Zakora et al. v. Troy Chrisman et al. 15 minutes for the plaintiff, 15 minutes to be shared by the defendants. Ms. Madeline Sienkiewicz for the appellants. Good morning. Good morning, your honors. Madeline Sienkiewicz here on behalf of the plaintiff, which is the estate of Seth Michael Zakora and the personal representative, his mother, Brandy Zakora. And while I know the briefing is rather lengthy in this case, plaintiff's points can boil down to three points. First, prison guards that smuggle illegal drugs into prisons pose an obvious and a substantial risk of harm to the inmates that are incarcerated therein. Second, prison officials who have knowledge that staff are involved in drug smuggling in prisons and fail to act reasonably in response can be subject to liability under the Eighth Amendment to the United States Constitution. And three, the allegations in plaintiff's complaint here do state a plausible claim for relief against the named defendants for their deliberate indifference to a substantial risk of serious harm that was presented by uncontrolled staff-involved drug smuggling in the Michigan prisons. Accordingly, the district court erred in dismissing plaintiff's complaint. A brief summary of the facts in this case. Like I said, the lawsuit was brought by Ms. Brandy Zakora after the untimely death of her son, Seth Michael Zakora. He was incarcerated in the Michigan Department of Corrections, the MDOC for short, and passed away in 2017. He was only 21 years old at the time of his death and did pass away from fentanyl toxicity. However, prior to his death, the MDOC had several problems with drug smuggling in the prisons. Can I ask you, so the weekend before two people die? Two people overdosed that same weekend in Lakeland. During the year prior. Go ahead. You're getting to what was the... Did they die? These two did not die in Lakeland. They were overdosed and sent to the hospital. In the year prior, in the MDOC facilities in general, two employees... Wait, this prison? No. How about this prison? What's the evidence show or the complaints show for the prior year in this prison? In this prison, there were the two overdoses that recently happened that I just mentioned. Did those people die or not? No, they did not die. They were hospitalized. Oh, okay. There were two overdoses in Lakeland the weekend prior to Seth's death. In the MDOC in general, there was a problem with drug smuggling where two employees did come forward with evidence of this, and after the first employee came forward, two inmates who were involved in the drug smuggling were killed. So those are the two deaths that I think might be confusing right off the bat. I guess I'll start. You can tell me why I'm wrong about this, but I'll start with this prison. One thing I might wonder about your claim is let's just say hypothetically there's a world in which there could be an Eighth Amendment violation for prisons not paying attention to drug smuggling and not paying attention to people overdosing or worse, dying. If in that prison, you just have two overdoses the weekend before, and if I'm understanding you correctly, there's no evidence as to what had been going on in that prison. I'm only focused on that prison. You can tell me why I'm wrong, but for now, only that prison. It's hard for me to understand the theory of that claim. In other words, there's not really time, if it's the weekend before, to solve a systemic problem of how are you going to do it. You don't know how it came in. The basketball theory didn't come until later. So how does that kind of show how cruel and unusual or unreasonable the prison's being if it's only the weekend before that it happens, and there hadn't been prior overdoses or deaths in that prison? The basketball theory, while it was only told to Miss Brandy Zucora after her son's death, that information that it was frequent that basketballs full of drugs were being thrown over would suggest that the time was farther in the history than just those two days. Additionally, also you have paragraph 29 where you say that another prisoner informed Lakeland Correctional Inspectors, specifically Defendant Chrisman and the inspector's office of the drug smuggling ring. Exactly. So I'm not sure exactly when he came forward with this information, but it was more than just the weekend before. I think the complaint alleges that it was prior to all three overdoses that he came forward. But there were overdoses before the weekend before? No. Remember, it's not just evidence of drug smuggling. The cruel and unusual problem arises. I mean, it could be stupidity, bad prison management, but in terms of protecting the health of the inmates, the real tip is people getting hurt, right? Correct. But you don't need to wait until someone gets hurt to have an Eighth Amendment violation. You could have a substantial risk of serious harm without someone dying before you can bring that claim. So I think to answer your question, the environment that allows guards to smuggle drugs creates in itself a substantial risk of harm to all the inmates. So if officials know that illegal drugs are being smuggled into the prison, there's in general a – What's funny about this is it's – you know, the thing that – one thing that makes an Eighth Amendment claim salient is the government restricts the inmates' liberty. They put them in the cell. They have restrictions. And so when they're involuntarily subjected to conditions or not looked – their medical needs are not looked after, you know, that makes some sense because the government took away their liberty. They can't protect themselves. And you can understand that world. But here it's a voluntary decision. Like, it's not guards saying, take the fentanyl. It's not guards coercing someone into injuring themselves. It's a voluntary decision. That's what seems different to me about this case from other Eighth Amendment cases. Agreed. But however, Your Honor, this would be similar to a suicide case, whereas an individual who has harmed themselves, but also in the road case. But those cases only get somewhere when someone – you know, the way prisons lose those cases is there's a serious medical need. It's almost as if, you know, someone comes in and has to have insulin every day. They're supposed to give them their insulin every day. Once someone's tipped off, someone's suicidal. You know, usually prisons don't get in trouble for a suicide where there's no suggestion the person is suicidal. So here, that's not part of the claim, right, that this particular individual couldn't be around drugs. I mean, they're illegal, so that makes the whole thing a little strange anyway. But this isn't a serious medical needs case. No, it's not a serious medical needs case. It's a general danger in the prison case. So the condition of confinement where there's illegal drugs that are being smuggled in by guards, that is what plaintiffs said create the dangerous condition in the prison. That is a substantial risk of harm to inmates because there's guards bringing in illegal drugs and inmates. In the complaint, it didn't allege that Seth took the drugs, that he ingested the drugs on his own. We don't know whether he took those drugs on his own. We know he died from drugs. There's nothing in the record saying anybody forced the drugs down his throat. No. No, but you do have a lot of different allegations from Paragraphs 28 through 34 that suggest information pertaining to Zecora himself. So Paragraph 30 says that this prisoner specifically gave Defendant Christman information about individuals supplying large amounts of drugs to Mr. Zecora. That's one of your allegations. Then, apparently in 34, you say two corrections officers told Zecora that he'd gotten himself into this mess, i.e., into the drug problem at Lakeland, and now it was his problem to deal with. So it sounds like I'm skipping over several other paragraphs, but you have tied Zecora's situation to the drugs coming in and to knowledge that Christman had pertaining to Zecora himself. Yes, Your Honor. And plaintiff would argue that those kites are going, if they're going straight to Inspector Christman, that the other inspector also had knowledge as well as the warden because if there's information being given to the inspectors, the inspectors are the criminal and security investigators for the entire prison. If they're getting tips that guards are committing illegal acts and putting prisoners at risk of overdose, the chain of command would allow an inference that Warden Hoffner as well as the other inspector were also aware of this information and failed to act in response to their knowledge that there was uncontrolled guard-led smuggling in there and posing risks to plaintiff of overdose. And drugs in prison do give a serious risk of overdose to prisoners. All prisoners or only those who are known to be drug abusers? I mean, what class does your client, Zecora, fit into? Just because he was generally a prisoner in Unit C? For example, in one of the unrelated, one of the incidents not in Lakeland, when the employee went forward and told supervisory officials that, you know, this inmate told me that there's guards smuggling drugs and here's the name of the other inmate, well, later those two inmates were killed. And they weren't doing drugs, but the fact is that illegal drug smuggling and drug trafficking is inherently dangerous. And not only to people for overdosing, but because of the violence that comes with drug trafficking. And so, does that answer your question, Your Honor? Yes. Well, I mean, as part of your allegations that Zecora, these officials should have known that Zecora in particular was somebody who was at risk because of these rampant drugs in the prison, as you say? Yes. As a result of the prisoner informing the inspector that these drugs were being smuggled and given directly to Seth. So they had specific knowledge that these drugs were coming in through him, which would put him as a target of violence and of a risk of overdose if he's using any of these drugs. And it is, the prison officials do have an obligation to provide reasonable safety. And so reasonable safety would include doing something in response to knowing that there's illegal activity by your employees in the facility. What's your best case on the clearly established prong for this kind of voluntary conduct by inmates? Well, this is a voluntariness issue. Recently in Rhodes v. Michigan, this court actually addressed the voluntariness issue. And in that case, there was an Eighth Amendment claim. That's the employment one where the person takes a job? Yes. And then something falls on them? He's pushing the laundry cart and it falls. I should put it differently. Voluntarily engaging in illegal conduct. What's the case that establishes that? I don't have a case that specifically establishes that, Your Honor. Why isn't that a problem on the clearly established prong? I mean, that's a pretty significant rule. That's not asking for a case decided on a Tuesday at 3 o'clock. That's a pretty significant rule and doctrinal point. Yes, Your Honor. However, the Supreme Court has gone through for many years and discussed how drugs aren't allowed in prisons and prison officials do have to combat drugs in prisons. And then in the circuits, there have been some circuit courts that discuss also the dangers of drugs in prisons. And given the illegal nature of smuggling them into prisons. The more drugs in prisons, the more there are cases saying, stop the drugs from getting into the prisons, the more you would expect a cognizable Eighth Amendment claim where the state sues the prison for letting these drugs get in and their child dying from an overdose. I understand, Your Honor. However, just because there's not a specific case where this has happened before with egregious behavior of illegal conduct happening by state employees in prisons, smuggling these drugs in to create a dangerous environment, I think that would be an obvious case following. There's Motowell v. Cuyahoga County in the Sixth Circuit that said, if any reasonable official would determine that the conduct was unconstitutional, you don't need a case on point. And that's following Supreme Court President like Pope v. Pelzer. And plaintiffs would argue here that the illegal nature of smuggling drugs in and the inherent dangers in illegal drugs, generally, not just in prisons, but generally through violence and overdose, make this an obvious case. I think I get your obviousness point in part because I get the point that it's obvious prisons should not be allowing drugs in. It's obvious if they know about it, they should stop it. What's not obvious is the person that voluntarily engages in the illegal conduct. You know, this would be a different case if the person arrived and they're going through detox. I mean, that would strike me as a slightly different case. They've been addicted to something, say fentanyl. They come in and they're getting access to it. That's a special needs situation. They're particularly vulnerable to something. That I could start to see. But here, they're not supposed to be doing this. And that seems to me a very significant difference from those cases. So I don't consider that, frankly, obvious that you have a cognizable Eighth Amendment claim. It's a little bit like you're not supposed to have cigarettes in the prison. Somehow they're there. You're not supposed to be smoking them. Someone smokes them. Then they sue the prison for lung cancer. Well, that's what happened in Helling v. McKinney. What's that? That's what happened in Helling v. McKinney. The Supreme Court case determined that a cognizable claim could potentially be stated from a secondhand smoke, and they remanded that case back down to determine. Okay, so I don't know the case, but I want to make sure you listen to what I said before you say it's the same case. I'm talking about someone who voluntarily smokes the cigarettes in a prison. They're not supposed to be smoking them in the prison. They get lung cancer, not secondhand smoke. They're the ones smoking them. I understand. They're the ones engaging in the illegal conduct, and they sue the prison for lung cancer. That seems to me extraordinary. That's not that case, I don't think. No, that case is no. I misunderstood your question. This secondhand smoke could create a vile 8th Amendment claim for your body. No, that's a totally different line of cases, I agree, because you're stuck. You can't go anywhere. That's the whole point of that line of cases. You're stuck there. I would argue the same thing counts as he can't leave the prison, he can't go get any help, and he did want help. There's allegations that he called his grandma, he said he's scared, he's not going to be able to leave. Wouldn't he have been just as vulnerable to fentanyl overdoses outside the prison? No one outside the prison was smuggling drugs to him, or giving him drugs specifically. He wasn't in prison on a drug charge. What was he in prison for? I believe something with criminal sexual conduct. All right, we'll give you your full rebuttal. Thank you. I guess there are two lawyers on the other side. Mr. Farrell. Good morning. May it please the Court, my name is Jim Farrell from the Michigan Attorney General's Office. On behalf of the eight Michigan Department of Corrections defendants, I'm going to split my time with my co-defendant. I'll take eight minutes, and she's going to take seven minutes for our 15 minutes. I don't have a lot to say. As appellees, obviously, we support the rationale of the lower court. Why not make this easier and just go to prong two of qualified immunity, clearly established? That's exactly correct. I agree with that. You know, it's interesting, the lower court, neither the magistrate judge who wrote a very well-researched report recommendation, nor the district judge ever mentioned or went through the qualified immunity analysis. Well, be careful with that. This is a mistake people make all the time. You're always doing the qualified immunity analysis when you do the constitutional ruling. Do you understand that? This is what leads to all kinds of confusion throughout the court. That is part of the qualified immunity analysis. It's just the first prong. And you can win on the first prong, and you can win on the second prong. So be careful how you say that. Well, it's interesting you say that. But anyway, why did they do it on prong one? Why didn't they do prong two? What was going on? It seems like that was an easier way to do it. Well, it's interesting. The lower court granted. So we both defendants filed motions to dismiss under Rule 12 and motions for summary judgment, you know, combined motions under Rule 56. The court, you know, it seems to me the court granted the motions to dismiss on Rule 12 that there was failure to plead a claim, that there was plausibility issues, Iqbal and Twombly plausibility problems. So it sounded like a Rule 8 dismissal of the case, yet the order says motion for summary judgment granted. So it's a little confusing how the case comes up to the court. Well, why isn't the complaint sufficient vis-à-vis Defendant Christman? Because what's alleged against Christman is that an unknown person at an unknown time told Mr. Christman, who was the facility inspector, who was essentially the sheriff of the facility, that Zucora was mixed up with drugs. There's no allegation that Mr. Christman actually inferred that this was a serious risk to his health, that he might, or to his safety, that he might overdose on the drugs. Wouldn't it be logical if there are a lot of drugs coming into prison and if the drugs in particular are large amounts of drugs are being supplied to Zucora, wouldn't there be a logical inference that there is a serious risk of harm to people like Zucora and including Zucora? Not necessarily, Your Honor. There's a lot of reasons why someone might have drugs. In prison? In prison, to sell them to make a profit. Now, the inference here that he needs to draw for plaintiff to make a viable Eighth Amendment claim is that he drew this inference that it was a serious risk of overdose. You're getting to the subjective harm. Do you concede that there is an objective risk here? No, I don't. And the reason why is that's another thing that troubled me with the lower court's decision. I mean, generally I agree with it because we won, but on the first prong, is there a constitutional right that was violated? Is there a constitutional violation? I have yet to see any case that has said that a prisoner has a constitutional right to a drug-free prison environment or that there would be a violation of his Eighth Amendment rights by him taking a voluntary drug overdose. I mean, there's no constitutional law on either one of those points. Does a prisoner have an Eighth Amendment right to have a safe environment in the prison? Yes, that's correct. But that's too broad. I think, as we know in qualified immunity, you have to look at the constitutional right in the somewhat narrow context of the case. Now, of course, the Supreme Court, the Sixth Circuit, every circuit has said there's a requirement to protect against known serious risks to a prisoner's safety. But in the specific context of this case, I have yet to see any cases, one case that has said that there is a constitutional right to a drug-free environment or that a prisoner has a constitutional right to be protected from himself voluntarily taking a drug overdose. What about the fact of the two prior overdoses just within 48 hours, though, of this overdose? I'm sorry, what was the first part? I mean, weren't there two prior overdoses in C Unit? Yes, there was. It occurred on January 20th, 21st, so there's an OD on Friday the 20th, on Saturday the 21st, and then Mr. Zakora died Sunday morning at 6 a.m. All right, so why after the first death, or not death, but overdose, or the second overdose, why weren't these officials, including Christman, immediately investigating what's going on in C Unit? Bring the dog in to sniff it out then or to do some investigation? I could discuss that, but there's no record in the case. But this is a dismissal on failure to state a claim, so there wouldn't be any evidence. The question is, is the allegation sufficient to allow the case to go forward? No, because the allegations are not plausible against any of the defendants, particularly against the sixth high-ranking defendants. I think it's a different claim of deliberate indifference. Well, the allegations on Christman are that Christman was told about the drug smuggling ring prior to Zakora's death, and Christman was told that individuals were supplying large amounts of drugs to Mr. Zakora, that Christman didn't do anything to investigate, even when the two other inmates had overdosed in the two days prior. And I'm just reading from the complaint. The complaint also says that while Zakora died from a fentanyl overdose, it was not determined whether Mr. Zakora intentionally took those drugs. So that's leaving that open to determine with proper discovery, which never occurred here. Well, if I understand the question, why aren't those allegations sufficient to state a claim for the case to go forward? Right, vis-à-vis Christman. Well, again, it's implausible that there's no allegation, I should say, that Christman drew the inference that there was a serious risk of an overdose death by Zakora, by Seth Zakora, simply because he has a connection to a drug smuggling ring inside the prison. How would a person such as Zakora's estate be able to get that kind of information about whether Christman drew the inference without having discovery? Well, that's an interesting point. Certainly they could take his deposition, and even then. How could they get it otherwise than through discovery? Well, I suppose they could. I haven't thought of that. But how could they find if he drew an inference that there was a risk of harm specifically to Zakora for an overdose? I don't know. I guess you'd have to look at... Because you're putting the estate in a position where they cannot possibly win by any complaint unless they have somehow information that fell into their laps. One of the problems is... Unless you emphasize prong two of qualified immunity, where they have all the information they need, just read the law. Of course. But to answer your question, Judge Moore, I mean, the magistrate judge addressed that in the R&R. You know, there's a mechanism under Rule 12d. In response to a motion, if you need discovery and you don't have the information, you need discovery. As if it's converted to summary judgment. But he did this on Rule 12b-6 as to all the MDOC people other than Mobley and Johnson, which are different people. But how big is Unit C, by the way? I mean, is it 100 prisoners? No, no. This was just a room. It was a... They call it a cube. I think there were six bunk beds. Six or eight bunk beds. So there's either 12 or 14 or 16 men in this room in bunk beds. Okay. So you already have two that overdosed one day and two days before Zecora. That's getting... You'd be thinking something's going on in that little quad. I'm sure. And I wouldn't be speculating here because we don't have a record. But I think they did think that. And I think there was action taken. Yeah, after Zecora died. Well, it was over a weekend. I don't know exactly. Again, we haven't done discovery, and I don't know exactly what steps anybody took on Friday night when the first man overdosed. I think he was taken to the hospital. The second man overdosed the next day. He was not taken to the hospital. They gave him a shot of Narcan, and he stayed in the facility. And then that night, really it was that night, Saturday night, that Zecora passed away in his bunk. And he was found on Sunday morning at 7 a.m. If I can... Thank you. Ms. Barranco? Good morning. Good morning, Your Honors, and may it please the Court, Assistant Attorney General Kyla Barranco, on behalf of the defendants' appellees for MSP, which would be Heather Last, James Wladkin, James Coleman, and Brandon Oates. And I have reserved seven minutes for oral argument. As to plaintiff's single claim against the MSP defendants, this Court should affirm the District Court for two reasons. First, plaintiff's complaint contains only conclusory allegations, which is insufficient to maintain a claim under Rule 12b-6. And second, and alternatively, Your Honors, the District Court properly concluded that the MSP defendants were entitled to qualified immunity because plaintiffs did not allege a constitutional violation occurred and because there's no clearly established law to demonstrate that a constitutional right exists. As to the Rule 12b-6 motion, Your Honors, plaintiff's complaint falls short of the pleading standards set forth in both Iqbal and Twombly. Those standards require both plausible and non-conclusory allegations, which plaintiffs fail to plead against MSP defendants. For example, plaintiffs assert that the MSP defendants, and I quote, knew and or participated in the drug smuggling and knew of the risks and harm associated with dangerous, illegal drugs. So while plaintiffs assert that this allegation is indeed a fact and it is actually a conclusion, all plaintiffs have done is set forth the standard for deliberate indifference, knowledge of a risk, and failure to take reasonable steps to abate it, and nothing more, Your Honors. And that's consistent with the other sparse allegations against the MSP defendants. As to the qualified immunity issue, Your Honors, plaintiffs cite not a single case below that stands for the proposition that there is a clearly established right to have police officers protect inmates. In her defense, she's saying, okay, fine, there are no cases. That's not helpful and clearly established, but then she's relying on the Hope v. Peltzer line of cases that says you don't need an exact case if it's sufficiently obvious. Isn't it obvious that you should keep drugs out of prisons? Isn't it obvious there are risks if you don't keep drugs out of prisons? I think that's her prong to argument. Well, it's interesting, Your Honor. All of those cases cited by plaintiff and below, they relied exclusively on Farmer v. Brennan. It was all prison officials that had a duty to protect the prisoners. And in this case, I believe there are a few cases in which perhaps sheriff's officers, when they run the prison, who have a duty to protect prisoners. Those are really the only cases that involve police officers having an affirmative duty to protect. There's been no cases cited that police officers who have no duty to run the prison have that obligation. I feel like I've seen police officers involved in detox cases where people die after being arrested, and they're being processed, and they're detoxing, and they run into problems. I guess I feel like I've seen officers in that setting. Your Honor, I'm not aware of any. But in those cases, it seems akin to the suicide cases as it relates to failure to protect or deliberate indifference as to a medical condition. And in those cases, what is required is not just a general awareness that there is a drug problem in prison, but a subjective awareness that that prisoner has a drug problem or is of a suicide risk, and that they're aware of that problem and they failed to abate it. And here we don't have those facts. So I'm trying to figure out what the facts are that are alleged in the complaint. And what I'm seeing is paragraph 41, which lists the MSP officers and says that the troopers knew that an officer was the person bringing suboxone and heroin into the facility but didn't investigate the allegation in determining the source of drugs that caused Mr. Zucora's death. Is that the essence of the claim against your clients? Correct, Your Honor. And as to paragraph 41, by plaintiff's own admission, that was told to one of the officers after Mr. Zucora's death, not before. Was that the sole theory by which the drugs got into the prison through the help of an officer? Yes, Your Honor. I believe the sole theory is that an officer helped by throwing basketballs filled with fentanyl and heroin over the fence. So you're saying that because your clients, the MSP officers, didn't know about this until after Mr. Zucora's death, they couldn't be liable? Correct, Your Honor. And they were aware on January 20th that there was an overdose in the prison. So on January 20th, there was a critical incident report filed with the MSP and there was an investigation open into that fact, but they were not aware. Why isn't the possibility that one of the officers is the basketball thrower? Well, Your Honor, plaintiff has actually in their briefing indicated that's an MDOC officer. That was the Jane Roe person? Correct. Now there's a subsequent amendment that was denied as futile or something that named who that Jane Doe was. That is correct, Your Honor. However, even in plaintiff's brief in support, or I'm sorry, brief in opposition to defendant's motion for summary disposition below, they cited to, or actually they included exhibits which showed that in the MSP report that they were only told after the fact that a cop officer was the one bringing these drugs into the prison. Well, did the MSP defendants, did they file affidavits? They did below. Okay, so was it summary judgment really more than 12b-6 as far as your clients are concerned? We argued alternatively for qualified immunity summary judgment, and the district court, it adopted, of course, the report and recommendation. The report and recommendation said that the defendant MSP's motion to dismiss slash motion for summary judgment was granted. But did the magistrate judge look at any evidentiary material or did the magistrate judge decide this simply on the basis of the complaint? There was two separate analyses, one under 12b-6 where they did not look at any evidentiary material and one under Rule 56 where they did, in fact, look at the evidentiary material. Vis-a-vis your clients? Vis-a-vis my clients as well as what plaintiffs submitted in response to our motion for summary judgment, which was a significant case, critical incident report from the Michigan State Police outlining what they found out during their investigation. It sounds like they did find out during their subsequent investigation that there was an officer involved, right? In fact, what they found out was that a prisoner had supplied the drugs to Mr. Zucora and he was subsequently arrested. Right, but that one who got was getting the drugs from some officer, presumably sending it in with basketball. I believe that's unclear, but to the extent any officer was bringing the drugs into the prison, it was an MDOC officer and not an MSP official. I'm happy to answer any questions your honors have, but otherwise I would thank you and ask you to affirm. Great, thank you. All right, Ms. Sienkiewicz, you've got your rebuttal. I want to respond to a couple points made by my opposing counsel. First of all, for drawing the inference under the second prong of the deliberate indifference analysis. In Farmer v. Brennan, the court did explain that whether a prison official has knowledge of a substantial risk can be drawn from circumstantial evidence, and a fact finder may conclude that a prison official knew of substantial risk from the very fact that the risk was obvious. And so that would be our response to how Crisman did have subjective knowledge of the risk of harm to Seth. Whether or not he drew that inference, that's a difficult question really. However, it's obvious here that the risk was, that there was lots of evidence of the risk, and the circumstantial evidence allows a fact finder to conclude that the defendant did know because the risk was obvious. And then as to the voluntariness that has been raised a few times, I just wanted to read the quote from Rhodes, which is, A prison official's deliberate indifference to a substantial risk of harm violates the Eighth Amendment. As simple as that, the case law does not call for an inquiry into voluntariness or compulsion. And then I also wanted to point the court to a Seventh Circuit case that I cited in the brief that states that a prisoner suffers from self-destructive tendencies, and that would be in this case taking illegal drugs. Well, so just on that one, does a complaint refer to special needs, special medical needs? Your complaint? No. Isn't that, that sounds like a special medical needs situation. Self-destructive tendencies. Right, so suicide. Well, here Crisman knew that the large drugs were being given to Seth, so I would compare that potentially to that case where there's a risk of harm to him. Or that he's a dealer. There's no, that's not been alleged at all. And there's been no discovery, so there's really no way that we knew that. I don't think that there's any evidence or allegations that he was giving the drugs to anybody else. However, that there were drugs being smuggled in by officers was so obvious to people in prison that actually a previous lawyer in this case, I did explain in the briefing, received a call during dispositive motions from a prison official, a prison guard, who said, here are the names of the three people who were involved in smuggling the drugs that killed Seth. And those three people are named. It's Tammy, Blair, Chase. I can't remember the two other names right now, but Jane Doe was named. A prison official did call and tell us, like, I have to leave, I have to give this information. This is what I know. And did inform counsel of the names of those Jane Does, the Jane Doe and the two people she was working with, which allowed plaintiffs to file that motion for leave to amend the complaint to include those names. And I also want to note that the informant, the prisoner who came forward to Inspector Christman, in the documentation it states that he was a documented informant. So he wasn't just like a random person who was giving information to try to confuse people or to maybe get himself out of trouble. He was a documented informant in the MDOC who discussed drugs with inspectors in the prisons before. And the critical incident report that we attached to our response to their motions was something that we received through FOIA. That's the only information that we were able to receive was the critical incident report done by the MDOC and MSP individuals in this case. And I also wanted to, my time is up, I apologize, your honors. Thank you. Okay, thanks to both of, all three of you for your arguments and briefs, we appreciate it. The case will be submitted.